UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALTA COUCH, :
 : NO. 1:12-CV-00210
    Plaintiff, :
 :
 :
   v. : **ORDER**
 :
 :
COMMISSIONER OF SOCIAL :
SECURITY, :
 :
    Defendant.

This matter is before the Court on the Magistrate Judge's Report and Recommendation (doc. 19) and Plaintiff's objections thereto (doc. 20).  In his Report and Recommendation, Magistrate Judge J. Gregory Wehrman recommends that the "non-disability finding" of the Administrative Law Judge be affirmed.  For the reasons indicated herein, we ACCEPT the recommended decision of the Magistrate Judge.

In brief, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging a disability onset of January 5, 2010.  In an opinion entered June 17, 2011, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that Plaintiff had the severe impairments of bipolar disorder, chronic low back pain secondary to degenerative disc disease of the lumbar spine with disc bulges, chronic obstructive pulmonary disease secondary to bronchitis and continued nicotine abuse, and

1

obesity (Tr. 18).  However, the ALJ also determined that Plaintiff was not disabled under the Social Security Act as none of these impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, and that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of medium work (Tr. 18-25).  The Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner (Tr. 5-7).

Plaintiff argued that the ALJ erred when he failed to adequately explain why her respiratory impairment did not meet or equal Listing 3.02, when he did not properly evaluate her mental impairments, when he improperly weighed the opinion evidence of consulting physician Beau Dusseault, M.D., and when he failed to find her fully credible.  The Magistrate Judge rejected all four of Plaintiff's assignments of error.

As to the first, he agreed that Plaintiff's spirometry test result was below the threshold for an individual of her height; thus, if considered valid, that result would serve to meet the listing related to chronic pulmonary insufficiency.  Moreover, the Magistrate Judge also credited Plaintiff's argument that a claimant's obesity can be considered in combination with her other impairments in determining whether she meets or equals a listing.  Here, though, he observed that the ALJ gave good

2

reasons for discounting the results of the pulmonary function test, among them the "mild" response of her treating physician, George R. Chaney, M.D., of only prescribing an inhaler and admonishing Plaintiff to stop smoking, a negative chest x-ray, and a list of daily activities that would belie significant lung disease. Further, Dr. Chaney's treatment notes, indicating that Plaintiff had had a "bronchitis exacerbation" just a week or so before the test, likewise supported the ALJ's inference that Dr. Chaney questioned its legitimacy. Thus, substantial evidence supported the ALJ's decision that Plaintiff did not meet or equal Listing 3.02.

The Magistrate Judge likewise rejected Plaintiff's contention that the ALJ improperly evaluated her mental impairments when he emphasized the focus of her therapy sessions—her husband's infidelity—and when he found that she did not experience episodes of decompensation of extended duration. He distinguished the authority cited by Plaintiff, <u>Barnhorst v. Comm'r of Soc. Sec.</u>, No. 1:10-cv-00526, 2011 WL 3811462 at *17 (S.D. Ohio Aug. 5, 2011), <u>adopted</u> <u>by</u> 2011 WL 3812639 (S.D. Ohio Aug. 26, 2011), concluding that ALJ Reynolds' reference to Plaintiff's counseling history was simply in the nature of a factual recounting rather than his own medical opinion of what factors were appropriately considered in assessing Plaintiff's psychiatric claims. Further, unlike the ALJ in <u>Barnhorst</u>, he

3

did not discredit Plaintiff's claims, but instead found that she had the severe impairment of bipolar disorder and assigned an RFC that accounted for her attendant limitations. And with regard to Plaintiff's periods of decompensation, the Magistrate Judge referred to Listing 12.00(B)(4)'s requirement that three such episodes occur within one year, in addition to at least one functional area of marked limitation. While true that Plaintiff had been admitted for psychiatric treatment numerous times, all such hospitalizations predated her alleged onset date, a fact her counsel does not dispute.

The Magistrate Judge dismissed the third error of which Plaintiff complains, namely the weight assigned to the opinion of examining expert Dr. Dusseault who concluded that she could work only a "partial workday" (see Tr. 24). ALJ Reynolds' treatment of the issue was adequate, inasmuch as he reviewed the examination findings in depth and determined that such a functional limitation "clashed with [Dr. Dusseault's] rather benign findings" (doc. 19 at 8). Fourth and finally, the Magistrate Judge believed substantial evidence supported the ALJ's view that Plaintiff was not entirely credible. Looking first to the objective medical record, the ALJ referenced normal x-rays of her lumbar spine and no evidence of herniated discs, both undercutting her complaint of debilitating back pain, as well as normal chest x-rays, undercutting her assertion of

4

disabling pulmonary disease. He also cited the broad scope of her daily activities as evidence that her testimony concerning the severity of her condition was not believable. In addition, the ALJ was less than convinced of her sincerity given that Plaintiff had not worked for more than ten years prior to her alleged onset date and had sought disability benefits multiple times.

Plaintiff has filed two objections to the Magistrate Judge's Report and Recommendation, which track her third and fourth assignments of error.[1] Her counsel argues that remand is appropriate because the ALJ failed to provide adequate reasons for discounting both Dr. Dusseault's opinion and Plaintiff's credibility. As required by 29 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has reviewed the findings of the Magistrate Judge and considered de novo the filings in this matter. Upon careful consideration, we find Plaintiff's objections unpersuasive.

The Court agrees with the ALJ that Dr. Dusseault's conclusion that Plaintiff can "sit, walk, and/or stand for a partial workday" (Tr. 315 (emphasis added)) is vague, but not because, as the Magistrate Judge remarked, "it speaks to an

---

[1] Plaintiff's objections refer to Magistrate Judge Wehrman's recommendation with regard to the opinion of "ALJ Keyser" (see doc. 20 at 1, 3). The Court presumes this reference is a clerical error, as Roger L. Reynolds was the Administrative Law Judge who determined that Plaintiff was not disabled.

5

issue not relevant to whether [P]laintiff is disabled, which concerns full-time work" (doc. 19 at 8). We recognize the illogical discrepancy that part-time work can qualify as "substantial gainful activity" at Step 1 of the sequential benefits analysis, but, "once a claimant has stopped working, she is considered disabled <u>if she is only able to perform part-time work</u>." <u>Willis v. Callahan</u>, 979 F. Supp. 1299, 1305 (D. Or. 1997) (emphasis ours). Thus, a claimant's RFC must be "determined by asking whether [she] can work an eight-hour day." <u>Id</u>. Clearly, Dr. Dusseault used the phrase "partial" workday, but the appropriate inquiry asks for how many hours (if any) out of an eight-hour day can this Plaintiff sit, stand and walk based on his examination of her and the objective evidence before him. Because Dr. Dusseault's putative functional capacity assessment lacked this precision, the ALJ's characterization of it as "vague" was not improper.

The Magistrate Judge accurately comments that the ALJ devoted a "significant" amount of his opinion to explain why he discounted Dr. Dusseault's conclusion for reasons other than vagueness (<u>see</u> doc. 19 at 8). Plaintiff concedes, as she must, that "some of Dr. Dusseault's examination findings were normal," but believes they "are not inconsistent with Dr. Dusseault's medical opinion that [she] is limited to part-time work" (doc. 20 at 3). To this end, Plaintiff asks the Court to interpret

6

Dr. Dusseault's singular diagnosis of "h/o bulging vertebral disk [sic] with subsequent [right lower extremity] neuropathy and pain" as one of sensory nerve damage, which, apparently in her counsel's opinion, leads to, among other things, reduced physical stamina and thus supports his conclusion that Plaintiff can only work part-time.  Neither this Court, however, nor Plaintiff's counsel, has the prerogative to make these associations.  And although Plaintiff admits that <u>some</u> of Dr. Dusseault's examination findings were normal, the fact is that <u>nearly all</u> of them are.  Substantial evidence, therefore, supports the ALJ's rejection of Dr. Dusseault's RFC assessment because it is distinctly at odds with the observations noted in the physical exam portion of his report.  To borrow counsel's reference to the device of Venn diagrams, there is no clear overlap between the marginal limitations found by Dr. Dusseault upon his examination of Plaintiff, quite aptly described as "benign" by Magistrate Judge Wehrman, and the considerable restriction that she can only work part-time, thus rendering her disabled under the statute.

Finally, the Court rejects the argument that the ALJ did evaluate Plaintiff's credibility as the regulations require, <u>see</u> 20 C.F.R. § 404.1529(c), and that he did not "clearly state his reasons" for rejecting her testimony as to the severity of her pain.  See <u>Felisky v. Bowen</u>, 35 F.3d 1027, 1036 (6th Cir. 1994).

7

That Plaintiff disagrees with the ALJ's reasons does not render them unclear. We have discussed already the lack of objective evidence supporting the considerable functional limitation that Plaintiff claims. The ALJ fairly recited her activities of daily living, finding they amounted to only a mild restriction. Counsel directs our attention to the October 2010 "Function Report" completed by Plaintiff in which she describes her housecleaning habits (Tr. 247) and the fact that her sister helps her clean (Tr. 235), but nothing in her brief written account provides a nexus to her assertion of debilitating pain. Nor did any portion of her live testimony. When asked by the ALJ to describe her typical day, Plaintiff stated that she stays at home, and likes to listen to music and to talk on the telephone to her family (Tr. 49). She visits with her sister, driving there but not back (Tr. 49-50) and as well with her daughter, but on a less frequent basis (Tr. 49). She also attends church (Tr. 49). Plaintiff's average day is admittedly simple. But germane to our analysis is the lack of any explicit (or even implicit) testimony by Plaintiff that her routine undertakings were necessitated because of, or limited by, pain. Thus, a determination by the ALJ that Plaintiff's activities of daily living undermined her credibility finds adequate support in the record.

Continuing, it is undisputed that Plaintiff did not work

for more than a decade (indeed, 15 years) prior to her alleged disability onset date of January 2010 (Tr. 172-174). Counsel takes issue with the ALJ's reference to the "several" prior claims filed by her (Tr. 23), stating that the record shows only one, filed in December 2009 and denied the following March 2010 (doc. 20 at 5). Our review of the record reveals a total of three applications for SSI disability benefits under Title XVI[2] and one application for disability insurance benefits under Title II.[3] Whether three prior claims are appropriately dubbed "several" is a matter of semantics. Plaintiff clearly has applied for benefits multiple times. With each unfavorable decision she received the standard Personal Decision Notice that explained in plain English what to do if she disagreed with the outcome (see Tr. 110-111; 114-115; 118-119; 124; 166-167). One need not be legally sophisticated to apprehend the stock language used to describe the appeals process. Moreover, it is

---

[2] Plaintiff's first application for SSI was filed on 05/13/2009 (see Tr. 65) and denied on 6/30/2009 because the State agency disability examiner on behalf of the Social Security Administration found her not disabled (Tr. 108-111), with no appeal taken. Her second application for SSI, the one cited by counsel, was filed on 12/07/2009 (see Tr. 74) and denied on 03/04/2010 by a different examiner who also found her not disabled (Tr. 112-115). As with the denial of her first application, Plaintiff did not file an appeal. Her third application for SSI was filed on 06/29/2010 (see Tr. 90) and is the origin of the matter now before the Court.
[3] Plaintiff's single application for DIB was filed on 07/22/2010 (Tr. 161-164) and denied on 07/27/2010 because Plaintiff lacked sufficient Social Security credits (Tr. 165-167).

9

apparent that Plaintiff eventually did understand the required steps inasmuch as she ultimately navigated the process on her own.

Counsel mentions often the fact that Plaintiff proceeded at the administrative level without the assistance of a lawyer. To this point, we observe that unsuccessful claimants likewise are advised within the body of the personal decision notices sent to them of their option to seek assistance from others, including lawyers, should they disagree with the Social Security Administration's decision to deny them benefits. The specific language reads as follows:

> **IF YOU WANT HELP WITH YOUR APPEAL**
>
> You can have a friend, lawyer, or someone else help you. THERE ARE GROUPS THAT CAN HELP YOU FIND A LAWYER OR GIVE YOU FREE LEGAL SERVICES IF YOU QUALIFY. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

(Tr. 110; 114-115; 118-119; 124). Furthermore, the Court notes that Plaintiff again was informed in a communication dated November 19, 2010 of her right to seek assistance prior to her hearing before the ALJ (Tr. 129-130) and provided an enclosure with a listing of groups to facilitate this process. Plaintiff declined in writing her right to have an attorney or other person

assist her immediately before the May 9, 2011 hearing (Tr. 153). Further, when ALJ Reynolds advised her orally once the hearing commenced that she was entitled to have legal counsel present and that payment to him or her would be made out of any award she received, with no payment owed in the event of no award, she stated that she wished to go forward without a representative (Tr. 34-35). In light of these many reminders that legal representation was an option, current counsel's inference that the ALJ somehow duped Plaintiff during the course of the hearing because she appeared pro se is not justified. We similarly reject counsel's suggestion that the ALJ failed "to properly develop the record" (see doc. 20 at 4 n.2) as he is required by 20 C.F.R. § 404.1512(d), with a heightened duty owed to pro se claimants. The functional capacity assessment upon which Plaintiff relies was rendered on February 20, 2010 some six weeks after her alleged onset date of January 5, 2010. Moreover, until now Plaintiff never has intimated, much less formally contested, that the medical evidence considered by the ALJ was outdated; rather, she only has argued that it was weighed improperly.

Accordingly, the Court ACCEPTS, ADOPTS and AFFIRMS the recommendation of the Magistrate Judge. Thus, the decision of the Commissioner to deny Plaintiff's application for Supplemental Security Income (SSI), which we find to be supported by substantial evidence, is AFFIRMED and the Court

11

ORDERS that this case be closed.

SO ORDERED.

Dated: November 5, 2013  s/S. Arthur Spiegel_____
                        S. Arthur Spiegel
                        United States Senior District Judge